Babe EASTWOOD, an individual, and
Eastwood Rentals, Inc., a
corporation, Plaintiffs,

v.

The NATIONAL BANK OF COMMERCE,
ALTUS, OKLAHOMA, a national bank-
ing association; Rental Tools, Inc., an
Oklahoma corporation; Ken Fergeson,
an individual; Harold Hamm, an indi-
vidual; and Phil G. Carson, an individ-
ual; Defendants.

Civ. No. 87–819–R.

United States District Court,
W.D. Oklahoma.

Aug. 25, 1987.

Robert D. Edinger, Travis A. Pickens, Musser, Bunch, Robinson & Hirsch, Oklahoma City, Okl., for plaintiffs.

John N. Hermes, Kenneth L. Buettner, Oklahoma City, Okl., Ralph E. Seals, Jr., Michael E. Smith, Tom L. Newby, McKnight & Gasaway, Enid, Okl., for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are three motions to dismiss Plaintiffs' complaint and a motion to stay this action, insofar as it is brought on behalf of Eastwood Rentals, Inc., until the attorney for that Plaintiff produces evi-

dence of his authority to act on behalf of that company, the stock of which was purchased by one of the Defendants herein and which is being liquidated.

The Plaintiffs herein are Eastwood Rentals, Inc. and Babe Eastwood, one of two of the former stockholders in Eastwood Rentals, Inc. See Complaint at ¶ 11. The Eastwood Rentals stock issued to both stockholders was pledged to First National Bank of Enid, Oklahoma, to secure three loans made by that bank to Eastwood Rentals. *Id.* at ¶ 15. Those loans were also secured by other property of Eastwood Rentals, including United States Treasury Investments Growth Receipts, labeled "TIGRS", having a maturity date of August 15, 2002 and a par value of $493,000. *Id.* Two of the loans, representing $1,456,335.60 of indebtedness, required monthly payments beginning September 1, 1986. *Id.* at ¶ 14(b) & (c). One of these loans and a third loan, see *id.* at ¶ 14(d), which did not require monthly payments, were due and payable in their entirety on March 2, 1987. *Id.* at ¶ 14(c) & (d).

Plaintiffs allege that Eastwood Rentals made the required monthly payments on the loans for the months of September through November. *Id.* at ¶ 17. In November, the bank was declared insolvent and the FDIC assumed the bank's operations. *Id.* at ¶ 18. Thereafter, the FDIC apparently sold the loans made by First National Bank of Enid to Eastwood Rentals to Defendant The National Bank of Commerce, Altus, Oklahoma ("Defendant Bank"), which had previously been an "upstream participant" in the loans. See *id.* at ¶ 20. Plaintiffs allege that Defendant Bank through its chairman of the board of directors made misrepresentations to the effect that "no further action" was required by Eastwood Rentals in connection with the loans until a meeting could be arranged to discuss restructuring the loans, *id.* at ¶ 20; that Defendant Bank "would agree to restructure" Eastwood Rentals' indebtedness, *id.* at ¶ 22; and "would agree" to Eastwood Rentals' proposal for restructure, *id.* at ¶ 26, which were "designed to lull the Company [Eastwood Rentals] and Eastwood into a belief

that the Bank was willing to restructure the company's indebtedness," *id.* at ¶ 38, while Defendant Bank was actually secretly scheming to liquidate Rental Tools and retire its indebtedness to the bank. *Id.* Plaintiffs allege that in reliance on the representations and "pending negotiations to restructure" the loans, Eastwood Rentals didn't make monthly payments in December of 1986 or January of 1987, and ultimately the Bank foreclosed on the stock collateral by selling it at a private sale to Eastwood Rentals' competitor, Defendant Rental Tools, for $500. *Id.* at ¶ 32. Rental Tools is now liquidating Eastwood Rentals, Plaintiffs allege. *Id.* at ¶ 34. Plaintiffs also allege that in January of 1987, Defendant Bank requested that Eastwood Rentals convey to it the TIGRS "as a means to reduce the company's [Eastwood Rentals'] principal indebtedness pending the loan restructure." Complaint at ¶ 24. They allege that Eastwood Rentals did so "in reliance on the pending loan restructure," after which Defendant Bank sold them to a third party for approximately $135,000. *Id.* at ¶ 24.

The complaint alleges that Defendant Bank and its chairman and president violated Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5, and that the remaining Defendants aided, abetted those Defendants or conspired with them to violate Rule 10b–5 (First Cause of Action). The complaint also alleges state law claims for fraud (Second Cause of Action), conversion (Third Cause of Action), slander (Fourth Cause of Action), interference with contract (Fifth Cause of Action), breach of contract and violation of statutory duties to preserve collateral and act in good faith (Sixth Cause of Action), and for a declaratory judgment (Seventh Cause of Action).

The complaint is verified by Plaintiff Babe Eastwood and contains a recitation that Plaintiffs have not filed this action as a collusive one, to confer jurisdiction, Complaint at ¶ 36, indicative that Plaintiff Babe Eastwood is suing derivatively on behalf of the Eastwood Rentals. And as this Court parses the Complaint, the claims predicated upon the pledge and sale of Eastwood

Rentals' treasury bonds is brought derivatively, only, and the claims predicated upon the foreclosure sale of stock in Eastwood Tools are brought by Plaintiff Babe Eastwood, only, in his own right.

## I.

### Motion to Stay

■ Defendants Harold Hamm ("Hamm") and Rental Tools, Inc. ("Rental Tools") have moved to stay this action insofar as it is brought on behalf of Eastwood Rentals until, pursuant to Okla.Stat. tit. 5, § 5, the attorney prosecuting this action produces the authority under which he appears on behalf of Eastwood Rentals. Plaintiffs question the applicability of the state statute to these proceedings. They also assert that the authority of the attorney to act on behalf of Eastwood Rentals is inextricably intertwined with the merits herein and the issue of who is properly in control of Eastwood Rentals such that a determination of the attorney's authority is inappropriate at this time. Because the Court finds herein that Plaintiff Babe Eastwood has standing to sue derivatively on behalf of Eastwood Rentals and Defendants have not challenged the authority of Plaintiff Babe Eastwood's counsel to represent that Plaintiff, Defendant's motion to stay is denied.

## II.

### Motion to Dismiss of Defendants National Bank of Commerce, Altus, Oklahoma and Ken Fergeson

■ An initial issue raised by these Defendants' motion to dismiss pursuant to Rule 12(b)(1) and (b)(6), F.R.Civ.P., is Plaintiffs' standing to sue under Rule 10b–5. Defendants correctly point out that Plaintiffs' pleading must establish that they are purchasers or sellers of securities to entitle them to sue for Rule 10b–5 violations. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.1952), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); *J.D. Simmons, Inc. v. Alliance*

*Corp.,* 79 F.R.D. 547, 550–51 (W.D.Okla. 1978); *Thompson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 401 F.Supp. 111 (W.D.Okla.1975). Defendants contend that no sale occurred when securities were pledged as security for commercial loan transactions or upon subsequent foreclosure of the collateral, relying principally upon *Lincoln National Bank v. Herber,* 604 F.2d 1038, 1045 (7th Cir.1979). The "sale" of Plaintiff Babe Eastwood's stock in connection with which the alleged fraud occurred, according to Plaintiffs' allegations, was not the initial "pledge" of the securities but the foreclosure sale thereof. The "sale" of Plaintiff Eastwood Rentals' zero coupons in connection with which fraud is alleged to have occurred was the conveyance or pledge and sale immediately thereafter. Thus, an issue of first impression in this district and in the Tenth Circuit is presented: Whether a pledgor of securities has standing as a "seller" under Rule 10b–5 when the securities are sold to pay off loans against which the securities were pledged. Essentially all of the courts which have been confronted with this issue have concluded that the answer is in the affirmative. *See Madison Consultants v. Federal Deposit Insurance Corp.,* 710 F.2d 57, 61 (2nd Cir.1983); *Bosse v. Crowell, Collier & MacMillan,* 565 F.2d 602, 611 (9th Cir.1977); *McClure v. First National Bank of Lubbock, Texas,* 497 F.2d 490, 495 (5th Cir.1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976); *Dopp v. Franklin National Bank,* 374 F.Supp. 904, 907–09 (S.D.N.Y.1974); *Cambridge Capital Corp. v. Northwestern National Bank of Minneapolis,* 350 F.Supp. 829, 833 (D.Minn.1972). Indeed, even in the *Lincoln National Bank v. Herber* case cited by Defendants, the Seventh Circuit, while holding that a pledge of securities is not a sale, recognized that "[i]t is possible that a sale may occur at a later point if the pledgee in fact forecloses on the stock after default on the loan...." 604 F.2d at 1044. Where the pledge is itself induced by fraud followed in close proximity by a sale of the pledged securities, as is alleged

with respect to the pledge and sale of Eastwood Rentals' treasury bonds, the alleged fraud occurs in connection with a sale of securities and the pledgor has standing as a seller under Rule 10b–5. *See Bosse v. Crowell, Collier and MacMillan,* 565 F.2d 602, 611 (9th Cir.1977). And where fraud occurs in connection with a foreclosure sale of pledged securities, parties who are directly or indirectly entitled to receive the proceeds of the sale of the pledged securities, like Plaintiff Babe Eastwood herein, should be considered sellers for purposes of the standing requirement under Rule 10b–5. *See, e.g., Cambridge Capital Corporation v. Northwestern National Bank of Minneapolis,* 350 F.Supp. at 834. Thus, the Court finds that both the individual Plaintiff and the corporate Plaintiff on behalf of which a derivative claim is brought are sellers for purposes of Rule 10b–5.

■ Defendants argue that Plaintiffs have failed to allege a misrepresentation of material fact (in connection with a sale of securities). This argument is predicated upon the Defendants' assertions that 1) Defendant Bank, as a secured party, had an absolute right to sell Plaintiff Babe Eastwood's stock pursuant to Okla.Stat. tit. 12A, § 9–504, after November of 1985, when the last loan payment by Eastwood Rentals was made; 2) there are no allegations that the original loans or pledges were tainted with fraud; and 3) there are no allegations that Plaintiffs were "defrauded" by Defendant Bank exercising its rights upon default. Defendants' arguments are without merit. They appear to deliberately ignore the crux of Plaintiffs' 10b–5 claim, that Defendants, beginning in December of 1985, by means of alleged misrepresentations to the effect that the Eastwood Rentals' loans would be restructured, lulled Plaintiffs into believing that the loans would be restructured and that loan payments need not be made and that this was done by design to carry out Defendant Bank's secret plan to liquidate Eastwood Rentals and retire the indebtedness. There is no requirement that the original loan or pledge was tainted with fraud inasmuch as a sale of securities in which pledgors are sellers occurs when a secured party sells such securities to pay off the loan for which the securities are pledged as collateral, *see supra,* and misrepresentations or other fraudulent activity that occurs "in connection with" such a sale are actionable under Rule 10b–5. *Id.* And while a secured creditor may have an "absolute" right to sell the collateral upon the default on a loan secured thereby, if the default occurs as a result of fraud perpetrated upon the borrower and pledgor, such fraudulent conduct is actionable under Rule 10b–5 as occurring "in connection with the sale" of such collateral, if the collateral is securities. *Cf. Bosse v. Crowell, Collier and MacMillan,* 565 F.2d 602, 611 (9th Cir.1977) (fraudulent intent in establishing debtor-creditor relationship via loan and pledge transaction may be in connection with "sale" which does not occur until foreclosure sale).

■ Defendants also contend that Plaintiffs have not established the materiality of facts allegedly misrepresented because they have not alleged that either Eastwood Rentals or Eastwood had the *ability* to perform under the terms of the loan agreement. Materiality is a mixed question of law and fact. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757, 766–67 (1976); *Berg v. First American Bankshares, Inc.,* 796 F.2d 489, 494–95 (D.C.Cir.1986); *Goldman v. Belden,* 754 F.2d 1059, 1067 (2nd Cir.1985). *Accord, Long v. Insurance Company of North America,* 670 F.2d 930, 934 (10th Cir.1982) (materiality of misrepresentations in insurance application). The Court is aware that in the context of short-form or "squeeze out" mergers, it has been held that in order to state a claim under section 10b or Rule 10b–5, "forced sellers," who are similarly situated to Plaintiff Babe Eastwood herein, must allege that they had a means to prevent the forced sale which they could and would have pursued had they known of the omissions and misrepresentations, to establish materiality and/or reliance. *See, e.g., Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 474 n. 14, 97 S.Ct. 1292, 1301 n. 14, 51 L.Ed.2d 480, 492 n. 14 (1977); *United Canso Oil & Gas Ltd.*

*v. Catawba Corp.*, 566 F.Supp. 232, 240 (D.Conn.1983).[1] This pleading requirement seems peculiarly appropriate here, where the misrepresentations were directed to a third party,[2] and Plaintiff Babe Eastwood's stock was subject to sale upon Eastwood Rentals' default on the loans, whether the default was induced by fraud or not. Nevertheless, at the pleadings stage, the Court is governed by the well-worn rule that a complaint should not be dismissed pursuant to Rule 12(b)(6), F.R.Civ.P., unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80, 84 (1957). *Accord, Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976). In making this determination, conclusory allegations are disregarded, *see Jones v. Hopper*, 410 F.2d 1323 (10th Cir. 1969), *cert. denied*, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970) but all well-pleaded factual allegations must be accepted as true and all reasonable inferences flowing therefrom must be indulged in the pleader's favor. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976). Thus, "a complaint may not properly be dismissed pursuant to Rule 12(b)(6) (or even pursuant to Rule 56) on the ground that the alleged misrepresentations or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2nd Cir.1985). Under these standards, the Court cannot conclude that Plaintiffs can prove no set of facts entitling them to relief or that the alleged misrepresentations were immaterial

as a matter of law because it may reasonably be inferred from Plaintiffs' allegations that they were lulled into inaction by the alleged misrepresentations that Plaintiff Babe Eastwood had the ability to redeem his stock, make the loan payments himself or cause Eastwood Rentals to make them, and that Plaintiff Eastwood Rentals had the ability to make the loan payments necessary to prevent default. Since both Plaintiffs received notice of the sale of Plaintiff Babe Eastwood's stock and apparently took no steps to prevent foreclosure, it does appear unlikely that Plaintiffs can *prove* that the misrepresentations were material (and Plaintiffs' reliance and causation); however, the Court is constrained to relegate this likelihood or unlikelihood to a matter of proof. *See, e.g., Madison Consultants v. Federal Deposit Insurance Corp.*, 710 F.2d 57, 62 (2nd Cir.1983).

Defendants challenge Plaintiffs' allegations of reliance and causation on the same basis, i.e., Plaintiffs' failure to allege that they had the ability to make the loan payments and thus avoid the losses they claim they incurred in reliance upon and as a result of Defendants' alleged misrepresentations. Additionally, Defendants seem to suggest that Plaintiffs' reliance was unjustifiable as a matter of law because Plaintiff Eastwood Rentals was at all times under a contractual obligation to make loan payments. With respect to the causation element, Defendants contend that Plaintiffs have failed to show "loss causation," i.e., a direct causal link between the misstatements and the claimant's economic loss. *See, e.g., Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 380 (2nd Cir.

---

**1.** In the *Sante Fe Industries* and *United Cansco* cases nondisclosures urged by Plaintiffs were deemed immaterial because the stockholders could not have prevented the sales. In cases involving primarily nondisclosure or omissions, materiality takes the place of reliance and establishes the requisite element of causation in fact. *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741, 761 (1972). Arguably in a case such as this, involving primarily affirmative misrepresentations, the necessity of alleging Plaintiffs' ability to prevent the forced sale of Babe Eastwood's stock should be ana-

lyzed in connection with the elements of reliance and causation.

**2.** In this instance, the "third party" is Plaintiff Eastwood Rentals, to which misrepresentations were allegedly directed through Plaintiff Babe Eastwood and Phil Lack, in their capacity as officers of Eastwood Rentals. Thus, this case does not present, nor do the Defendants address, the classic problematic issue of alleged reliance on misrepresentations directed to a third party. *See, e.g., Peerless Mills, Inc. v. American Telephone and Telegraph Company*, 527 F.2d 445, 448–51 & 450 n. 2 (2nd Cir.1975).

1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

Reliance and causation are essential elements of Plaintiffs' Rule 10b–5 claims, *Feldman v. Pioneer Petroleum, Inc.,* 606 F.Supp. 916, 925 (W.D.Okla.1985), *aff'd,* 813 F.2d 296 (10th Cir.1987). Reliance and causation are closely related concepts and, in a case such as this involving primarily misrepresentations rather than omissions, the reliance element is conceptually synonymous with transaction causation. *See Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d at 380. *See also Holdsworth v. Strong,* 545 F.2d 687, 695 (10th Cir.1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 805 (1977). Plaintiffs have alleged that "[i]n reliance ... [on materially false statements], Plaintiffs unwillingly and unknowingly pursued a course of action which ultimately resulted in liquidation of the Company and conversion of the Company assets." Complaint at ¶ 14. They also allege that in reliance on the alleged sequential misrepresentations, Eastwood Rentals did not make any monthly loan payments for the months of December, 1986 and January, 1987, Complaint at ¶¶ 21, 23, and further, that Plaintiffs have "suffered damages as a result of Defendants' actions in liquidating and converting the Compa-

ny's assets." *Id.* at ¶ 48. These allegations of reliance and causation are adequate, though barely so. Summary dismissal of a claim for failure to show causation is proper under the foregoing standards only where there is no question of fact as to whether Plaintiffs' injury was caused by the alleged misrepresentations.[3] *In re Commonwealth Oil/Tesoro Petroleum Corporation Securities Litigation,* 467 F.Supp. 227, 243 (W.D.Tex.1979).[4] It is inferable from Plaintiffs' allegations, as noted above, that had the alleged misrepresentations not been made, or had Plaintiffs known that Defendant Bank did not intend to restructure Eastwood Rentals' loans, Plaintiff Eastwood Rentals would have made the loan payments and therefore not pledged its zero coupons to reduce its indebtedness and/or that Plaintiff Babe Eastwood would have caused the loan payments to be made or redeemed his stock such that neither Plaintiff would have suffered the losses of which they now complain. Of course, as with the issue of materiality, if Defendants can establish that Plaintiffs lacked the ability which the Court infers from Plaintiffs' allegations, causation would be absent, *see Madison Consultants v. Federal Deposit Insurance Corp.,* 710 F.2d at 65 n. 6. But as with materiality, this issue must be resolved

---

**3.** The cases relied upon by Defendants for the propositions that the alleged misrepresentations were neither material nor the cause in fact of Plaintiffs' injuries because Defendant Bank had enforceable contract rights in the collateral are distinguishable from that herein. In *St. Louis Union Trust Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040 (8th Cir. 1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978), the plaintiff's contractual obligation to sell his stock to the defendant was triggered by the decedent's death. Thus, the court found that any loss which was occasioned by the sale of the decedent's stock was caused by a prior valid and unchallenged stock agreement and the death of the shareholder, both of which were unrelated to the alleged nondisclosure of defendant's intent to "go public." 562 F.2d at 1049. Accordingly, the court concluded that whether the causation issue was analyzed in terms of materiality, reliance or both, causation in fact did not exist because whatever the decedent's executors knew or didn't know about a future public offering was irrelevant to their "decision" to sell the stock. *Id.* As noted by Plaintiffs herein, in that case there was no alle-

gation that any fraud by the defendant induced the event which triggered the contractual obligation to sell parallel to Plaintiffs' allegations herein that Defendants' conduct induced the loan default, triggering contractual foreclosure rights.

In *Toledo Trust Co. v. Nye,* 588 F.2d 202 (6th Cir.1978), the other case cited by Defendants, the alleged nondisclosures were held to be immaterial as a matter of law because the corporate defendant had an enforceable stock option to repurchase the deceased's stock at a price set on a specified date, which date was long before the undisclosed information even existed. 588 F.2d at 206–07. In contrast to the *Toledo Trust* case, the alleged misrepresentations on which Plaintiffs' 10b–5 claims herein are predicated occurred prior to the triggering event—default, and are alleged to have caused such default.

**4.** The causation element in *In re Commonwealth Oil/Tesoro Petroleum Corporation Securities Litigation* was addressed specifically in connection with the Section 14(e) claim, 15 U.S.C. § 78 n(e) rather than in connection with the Section 10b claim asserted by plaintiffs therein.

upon the proof, not upon the pleading herein. Differentiating "transaction causation" from "loss causation" may be a useful analytical procedure where the alleged misrepresentations relate directly to the value of the securities but may be inappropriate where the alleged misrepresentations relate to collateral matters, as here. *See Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 710 n. 3 (2nd Cir.1980), *cert. denied sub nom. Wood Walker & Co. v. Marbury Management, Inc.*, 499 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). In any event, the Court cannot say on the basis of the pleadings that the misrepresentations were not the proximate reason for the damages Plaintiffs allege they sustained. *See Holdsworth v. Strong*, 545 F.2d at 694–96. Nor can the Court conclude, as these Defendants suggest, that Plaintiffs' reliance was unjustifiable as a matter of law because Plaintiff Eastwood Rentals was at all times under a contractual obligation to make loan payments. It may reasonably be inferred from Plaintiffs' allegations that regardless of the loan status, Defendant Bank had not declared the loans in default at the time the alleged misrepresentations that no further action need be taken with respect to the loans, that the Bank would agree to restructure them, etc., were made. Moreover, whether the Bank had a right to accelerate the loans and/or foreclose on collateral securing same under the terms of the loan agreement(s) upon Eastwood Rentals' failure to make a monthly payment is a question of fact. Thus, for much the same reasons that the Court could not conclude that the alleged representations were immaterial as a matter of law, the Court cannot conclude that Plaintiffs' alleged reliance on the misrepresentations was unjustifiable as a matter of law. *See Holds-*

*worth v. Strong*, 545 F.2d at 696–97. *Accord, In re Commonwealth Oil/Tesoro Petroleum Corporation Securities Litigation*, 467 F.Supp. at 243.

In summary, if Plaintiffs could and would have made the loan payments, which is inferable from Plaintiffs' allegations, then neither materiality or justifiable reliance and causation are precluded and Plaintiffs have stated claims for relief under Rule 10b–5. *See, e.g., Trecker v. Scag*, 679 F.2d 703, 709 (7th Cir.1982) (materiality dependent on right to withdraw redemption demand); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 538 F.2d 532, 537 (3rd Cir.), *cert. denied*, 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976) (undisclosed planned public offering material because, although Plaintiff was contractually obligated to surrender his stock upon retirement, he might have postponed the retirement had proper disclosures been made).[5]

Defendants also challenge Plaintiff Babe Eastwood's standing to bring suit derivatively on behalf of Eastwood Rentals for damages it allegedly sustained as a result of the sale of the zero coupons because he is no longer a shareholder of Eastwood Rentals.[6] Defendants cite no authority which directly supports their argument. Plaintiff responds by asserting that the Court need not address this issue because *Eastwood Rentals* has the right to bring this action in its own name until Defendants prove that the stock foreclosure sale was valid. Plaintiffs' response is not comprehensible in that a) the stock foreclosure sale has relevance only to Plaintiff Babe Eastwood's status as a shareholder and may affect his right to sue derivatively on behalf of Eastwood Rentals but has no bearing on Eastwood Rentals' right to sue

**5.** Both *Trecker v. Scag* and *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* involved 10b–5 claims based upon omissions. However, the analysis is the same in cases such as that *sub judice* except that reliance rather than materiality provides the basis for causation. *Compare with Madison Consultants v. Federal Deposit Insurance Corporation*, 710 F.2d at 65 n. 6.

**6.** Defendants do not raise the issue of Plaintiff Babe Eastwood's failure to allege that a demand

was made upon Eastwood Rentals' board of directors to sue Defendants herein, which demand was refused, or that such a demand would have been futile. Furthermore, the factual allegations herein arguably establish that such a demand would have been futile, excusing a demand and refusal. *See generally Wilhelm v. Consolidated Oil Corp.*, 84 F.2d 739, 748 (10th Cir.1936); *Walden v. Elrod*, 72 F.R.D. 5, 14 (W.D.Okla.1976).

in its own name and b) based upon the pleadings and responses filed herein, it is absurd to suggest that Eastwood Rentals which is majority or wholly-owned by one of the Defendants herein is bringing suit in its own name.

■ The issue posed by Defendants' argument is a difficult one. Rule 23.1 of the Federal Rules of Civil Procedure has been interpreted to require that a Plaintiff suing derivatively on behalf of a corporation be a shareholder not only at the time of the transaction of which he complains, but also at the time suit is brought. *See, e.g., Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 321, 56 S.Ct. 466, 471, 80 L.Ed.2d 688 (1936); *Schilling v. Belcher,* 582 F.2d 995, 999 (5th Cir.1978). This requirement has been enforced to abate an action or appeal if the plaintiff loses his shareholder status during the pendency thereof. *See, e.g., Schilling v. Belcher,* 582 F.2d at 999; *Tryforos v. Icarian Development Co.,* 518 F.2d 1258, 1263 (7th Cir. 1975), *cert. denied sub nom. Manta v. Tryforos,* 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed. 2d 103 (1976). In diversity cases, Courts generally look to the law of the state of incorporation of the corporation on behalf of which a derivative claim is asserted to determine whether the plaintiff is and was at all pertinent times a shareholder, with standing to sue, *see, e.g., Harnett v. Billman,* 800 F.2d 1308, 1316 (4th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987); *Susman v. Lincoln American Corp.,* 587 F.2d 866, 871 (7th Cir.1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980); *Anderson v. Boothe,* 103 F.R.D. 430, 442 (D.Minn.1984); *Jenkins v. Haworth, Inc.,* 572 F.Supp. 591, 602 (E.D.Mich.1983), although there is considerable confusion as to whether state or federal law is determinative of shareholder status, *see, e.g., Schilling v. Belcher,* 582 F.2d at 999, 1002 & 999 n. 1, or whether Rule 23.1 is procedural such that a plaintiff must comply with both the Rule and applicable state law, *see Susman v. Lincoln American Corp.,* 550 F.Supp. 442, 446 n. 6 (N.D.Ill. 1982). It appears, however, that when a derivative suit is brought under federal

law, as is the 10b–5 claim herein, substantive federal law or policy determines whether a plaintiff has shareholder status within the meaning of Rule 23.1, F.R. Civ.P., and therefore has standing to sue derivatively. *See Drachman v. Harvey,* 453 F.2d 722, 725–30 (2nd Cir.1971), *rev'd on other grounds,* 453 F.2d 736 (2nd Cir. 1971) (en banc); *In re Pittsburgh & Lake Erie Railroad Company Securities and Antitrust Litigation,* 543 F.2d 1058, 1065– 67 (3rd Cir.1976) (standing to object to settlement of derivative federal securities and antitrust claims is governed by federal law and since settlement disposed of all claims in one package, differentiating between federal and state claims for purposes of standing unnecessary); *Issen v. GSC Enterprises, Inc.,* 508 F.Supp. 1278, 1295 (N.D.Ill.1981). *See also Bangor v. Aroostook Railroad Co. v. Bangor Punta Operations, Inc.,* 353 F.Supp. 724, 727–28 (D.Me.1972), *rev'd on other grounds,* 482 F.2d 865 (1st Cir.1973), *rev'd,* 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) (federal law, specifically the terms of Rule 23.1, governs determination of standing, by virtue of contemporaneous ownership, to sue derivatively for Exchange Act and Clayton Act violations and state law, if not in conflict with the federal rule, governs determination of contemporaneous shareholder status and hence standing where jurisdiction is based on diversity). Courts have taken different approaches to ascertain what federal law on the issue of shareholder status is. For example, in *Drachman v. Harvey,* the Second Circuit looked to the purposes of the Securities and Exchange Act of 1934, which created the substantive right being asserted by the shareholders, to conclude that federal law or the policy embodied therein required that beneficial or equitable owners of stock, whose shares were registered in others' names, be considered shareholders, with standing to sue, within the meaning of Rule 23.1, F.R.Civ.P. *Drachman v. Harvey,* 453 F.2d 722, 725– 730. Other courts have seemingly looked only to the language of Rule 23.1 and required literal compliance therewith. *See, e.g., Mills v. Esmark, Inc.,* 573 F.Supp.

169, 175–76 (N.D.Ill.1983); *Issen v. GSC Enterprises, Inc.,* 508 F.Supp. 1278, 1295 (N.D.Ill.1981). Still another approach might be to adopt the law of the state of incorporation as governing federal law, which appears to be what the court did in *Susman v. Lincoln American Corp.,* 550 F.Supp. 442 (N.D.Ill.1982). The Court concludes that under any of these approaches, Plaintiff Babe Eastwood has standing, as an "equitable" shareholder, to sue derivatively on behalf of Plaintiff Eastwood Rentals. In reaching this conclusion, the Court notes that the Tenth Circuit has not been hesitant to find that a plaintiff who has lost his technical shareholder status in a transaction permeated by fraud is an "equitable" shareholder, with standing to sue derivatively, *see Frey v. Frankel,* 443 F.2d 1240, 1244 (10th Cir.1971); *Amen v. Black,* 234 F.2d 12, 23 (10th Cir.1956), at least where the plaintiff seeks to set aside the fraudulent transaction in which he lost his technical or legal shareholder status, *see Amen v. Black,* 234 F.2d at 23. Furthermore, conferring equitable shareholder status upon a shareholder who is, in the same suit in which he asserts derivative claims, challenging the very transaction by which he allegedly lost his shareholder status, which transaction is alleged to have been induced by the same conduct which caused the loss to the corporation for which the derivative claim is asserted, does not derogate the policy said to be served by the shareholder status requirements of F.R. Civ.P. 23.1. "[B]ecause a shareholder will receive at least an indirect benefit ... from any corporate recovery, he has an adequate interest in vigorously litigating the claim." *Portnoy v. Kawecki Berylco Industries, Inc.,* 607 F.2d 765, 767 (7th Cir.1979). *Accord, Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 93 L.Ed. 1528, 1538 (1949). When the derivative claim herein is properly viewed as contingent upon Plaintiff Babe Eastwood's individual claim to set aside or rescind the sale of his stock, certainly Plaintiff has an adequate interest in vigorously litigating the corporate claim. Finally, even if this Court were to embrace Oklahoma law, the law of the state of Eastwood Rentals' in-

corporation, as applicable federal law herein, the result would not be different. Section 1126 of the Oklahoma General Corporation Act, 18 O.S.Supp.1986 § 1126, has not yet been construed by Oklahoma courts. However, that section, as much of Oklahoma's new Act, is identical to a provision of the Delaware General Corporation Law, 8 Del.C. § 327, which together with Delaware Chancery Court Rule 23.1 (which is nearly identical to F.R.Civ.P. 23.1), has been construed to require that a plaintiff suing derivatively must have shareholder status not only at the time of the transaction of which he complains but at the time suit is brought as well. *See Lewis v. Anderson,* 477 A.2d 1040 (Del.1984) and cases cited therein. However, Delaware has also recognized two exceptions to this rule, one being where the transaction or merger by which the putative plaintiff lost his shareholder status is the subject of a claim of fraud. *See Lewis v. Anderson,* 477 A.2d 1040, 1046 n. 10, *citing Bokat v. Getty Oil Co.,* 262 A.2d 246, 249 (Del.1970); *Schreiber v. Carney,* 447 A.2d 17, 21–22 (Del.Ch.1982). *See also Susman v. Lincoln American Corp.,* 587 F.2d 866, 872 (7th Cir.1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980) (applying Delaware law). *Accord, Cede & Co. v. Technicolor, Inc.,* slip. op., unpublished, [Available on WESTLAW 1987 WL 4768] (Del. Ch. January 13, 1987, as revised, January 20, 1987). *But see Susman v. Lincoln American Corp.,* 550 F.Supp. 442, 445–46 (D.Ill.1982) (applying Delaware law). The Court concludes that if the Oklahoma Supreme Court were confronted with the issue of whether a putative plaintiff in the position of Plaintiff Babe Eastwood herein had standing to sue derivatively on behalf of an Oklahoma corporation, that court would follow Delaware courts' lead in construing a statute identical to Oklahoma's governing statute and the exception to shareholder status recognized by Delaware courts and would find that such a plaintiff has standing to sue derivatively. Consistent with the foregoing, whether the pendent derivative state law claims asserted herein are governed by state or federal law, Plaintiff Babe Eastwood has standing

to assert those claims on behalf of Eastwood Rentals as well.

These Defendants also assert that the derivative claims herein are improper because a derivative suit is directed at the corporation itself and not at third parties with whom the corporation has dealt. This assertion, as noted by Plaintiffs, is a gross misstatement of the law. Cases pronouncing the law on this subject are so legion that no citation to them for these Defendants' counsel's benefit is warranted.

■ Having determined that Plaintiffs have stated claims for relief against these Defendants under Rule 10b–5, Plaintiffs' state law claims are not subject to dismissal under F.R.Civ.P. 12(b)(1) unless they are so factually separate and distinct from the Rule 10b–5 claims that they cannot be said to derive from a nucleus of operative facts common to the federal claims or they are not such that they would be expected to be tried together with the federal claims in one action. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Defendants maintain that the slander claim (Fourth Cause of Action) is subject to dismissal for lack of subject matter jurisdiction under *Gibbs*. The Court does not agree. Plaintiffs assert that the slander claim is based upon Defendant Bank's action of taking possession of Eastwood Rentals' assets as a publication of Eastwood Rentals' default, relying on *Alaska Statebank v. Fairco*, 674 P.2d 288, 294 (Alaska 1983). Thus understood, although there is not a perfect overlap between the facts on which the slander claim and the federal law claim are based, there is a sufficient connection between the factual predicates for the claims for federal and pendent jurisdiction and the federal and state claims are such as would be expected to be tried in one action. *See, e.g., Ritter v. Colorado Interstate Gas Co.*, 593 F.Supp. 1279, 1281 (D.Colo.1984). Moreover, the Securities and Exchange Act specifically provides that rights and remedies provided therein are cumulative to those existing at law or in equity. 15 U.S. C. § 78bb. Thus, the federal statute certainly does not expressly or by implication negate exercise of jurisdiction over the non-federal claims. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274, 282 (1978); *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276, 288 (1976). The Court therefore has the power to hear the slander claim and these Defendants do not urge that the Court should nevertheless decline to exercise that authority, under the discretionary facet of *Gibbs*. Finally, because Defendant Bank's act of taking possession of Eastwood Rentals' assets may constitute slander *per se, see Alaska Statebank v. Fairco*, 674 P.2d 288, 294 (Alaska 1983); Okla.Stat. tit. 12, § 1444.1, for which special damages need not be alleged, *see* Okla.Stat. tit. 12, § 1442(3); *Gentry v. Wagoner County Publishing Co.*, 351 P.2d 715, 717 (Okla.1960), the slander claim is not subject to dismissal under F.R.Civ.P. 12(b)(6) based on the arguments made by Defendants.

### III.

### *Motion to Dismiss of Defendant Phil G. Carson*

Defendant Phil G. Carson has moved to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) & (b)(6) and 9(b), F.R.Civ.P. He argues that Plaintiffs have failed to state claims against him for either primary or secondary liability for Rule 10b–5 violations (first cause of action) and for common law fraud (second cause of action) with the particularity required by Rule 9(b), F.R.Civ. P. Furthermore, he contends that Plaintiffs' allegations are deficient under either Rule 8(a) or Rule (b), F.R.Civ.P., to establish a claim against him for control person liability for 10b–5 violations. He further asserts that because Plaintiffs have failed to state a federal law claim against him, the Court lacks subject matter jurisdiction and the state law claims must therefore be dismissed.

Plaintiffs in response urge that because control person liability requires only authority to control rather than the actual exercise of control, under the test for particularity set forth in *Burkhart v. Allson Realty Trust*, 363 F.Supp. 1286 (N.D.Ill.

1973), Plaintiffs have stated a claim for relief for control person liability.

Plaintiffs' allegations with respect to the alleged liability of Defendant Carson as a controlling person are as follows:

1. Carson has served as president of the National Bank of Commerce, Altus, Oklahoma during certain times relevant hereto. Complaint at ¶ 6.

2. The defendants Fergeson and Carson, as officers and/or directors of the defendant Bank, were at all relevant times controlling the actions of the Bank in execution of the aforesaid scheme. Complaint at ¶ 40.

These allegations are sufficient to show that Defendant Carson possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of the Bank, *see* 17 C.F.R. 230.405(f); *see also Richardson v. MacArthur*, 451 F.2d 35, 41–2 (10th Cir.1971); *Stern v. American Bankshares Corp.*, 429 F.Supp. 818 (E.D.Wis.1977); *Denoco Energy Drilling Fund, Ltd. v. Midwestern Resources, Inc.*, CIV–83–1469–W, slip. op. (W.D.Okla. Aug. 29, 1983), and therefore are sufficient to allege secondary liability for violations of Rule 10b–5 pursuant to Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), provided that Plaintiffs have adequately alleged with the requisite particularity a primary violation of Rule 10b–5 by others. Defendant Carson does not, however, challenge the adequacy of the primary violation allegations.

Defendant makes it clear in his reply brief, however, that an additional basis for his motion is Plaintiffs' failure to allege with particularity any acts by him on which any other forms of secondary liability or primary liability for violations of the securities law may be predicated. Defendant Carson further in effect argues that Plaintiffs' pleading is deficient to give notice of the claims against him pursuant to F.R. Civ.P. 8(a): "If plaintiffs seek to impose liability against Carson solely by reason of being a control person, then the Complaint should so state." Reply Brief at ¶¶. 2–3.

█ It does appear from Plaintiffs' complaint that Plaintiffs are also attempt-

ing to state claims against Carson for aiding and abetting violations of Rule 10b–5, conspiring to violate same and possibly for primary violations. *See* Complaint at ¶¶ 38, 42, 43 & 44. It is also apparent that Plaintiffs' allegations are inadequate under the test for particularity under Rule 9(b) "applicable generally to securities fraud cases," *Seattle–First National Bank v. Carlstedt*, 800 F.2d 1008, 1010 (10th Cir. 1986), to state claims against Defendant Carson for primary violations or for aiding and abetting or conspiring in violations of Rule 10b–5. Nowhere in the complaint do Plaintiffs specify any alleged misrepresentations or omissions or other fraudulent acts made or done by Defendant Carson. Rather, "misrepresentations, omissions, acts and conduct ... designed to lull the Company and Eastwood into a belief that the Bank was willing to restructure the Company's indebtedness," Complaint at § 38, previously ascribed in the complaint only to Fergeson, *see* Complaint at ¶¶ 20, 22, are conclusorily ascribed to "the Bank, Fergeson and Carson" in paragraph 38 of the Complaint. Similarly, Plaintiffs charge that the "Bank, Fergeson and Carson conspired with and were aided and abetted in their scheme to liquidate the Company by the acts, conduct, representations and omissions of defendants Rental Tools and Hamm," Complaint at § 39; *see* Complaint at ¶¶ 42 & 43, although nowhere is it alleged what misrepresentations, omissions or acts Defendant Carson is alleged to have made or done which would afford a basis for primary liability; would constitute his knowing and substantial assistance in the fraud, *see Feldman v. Pioneer Petroleum, Inc.*, 606 F.Supp. 916, 925 (W.D.Okla.1985), *aff'd*, 813 F.2d 296 (10th Cir.1987); or an agreement between Defendant Carson and the primary violator to violate Rule 10b–5 or engage in conduct violative of the Rule and a specific act committed by him in furtherance of the conspiracy, *see*, *e.g.*, *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119 (2nd Cir.1982); *Kronfeld v. First Jersey National Bank*, 638 F.Supp. 1454, 1468 (D.N.J.1986); *cf. Zabriskie v. Lewis*, 507 F.2d 546, 554 (10th Cir.1974) (knowing

participation and sufficient link; treating aider and abettor liability and conspirator liability as essentially the same). In this Circuit, in securities fraud cases,

> Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means ... that individual plaintiffs should identify particular defendants with whom they dealt directly and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them—and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them and how. *Seattle–First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986), quoting, *Trussell v. United Underwriters, Ltd.,* 228 F.Supp. 757, 774–75 (D.Colo.1964).

In *Seattle–First National Bank v. Carlstedt, supra,* the Tenth Circuit considered the adequacy of securities fraud counterclaims against SeaFirst as the alleged principal for whom Penn Square and others were acting as agents in arranging certain financing. 800 F.2d 1010. Thus, the question of whether allegations of aider and abettor or conspirator liability, apart from the integral element of a primary violation, need be pleaded with particularity pursuant to Rule 9(b) was not before the court. Nevertheless, the Tenth Circuit held that "in this circuit the particularity requirement of Rule 9(b) is applicable *generally* in securities fraud cases." *Id.* (emphasis added). Furthermore, the court suggested in a footnote that Rule 9(b) applies to the other elements of secondary liability and cited approvingly to *D & G Enterprises v. Continental Illinois National Bank and Trust Company of Chicago,* 574 F.Supp. 263 (N.D.Ill.1983) wherein the court tested allegations of secondary liability for conspiracy to violate section 12(2) of the Securities Act by Rule 9(b). 800 F.2d 1011 n. 2. In *D & G Enterprises v. Continental Illinois National Bank and Trust Company of Chicago, supra,* the district court held that allegations nearly identical to those *sub judice* were deficient:

> Continental's alleged violations are lumped together with the actions of non-defendants in such a way that Continental cannot accurately discern the nature of its role in the alleged violations. In still other portion of the complaint, the allegations refer to Continental, "and other banks acting in concert with them." Thus, even a careful reading of plaintiff's complaint will not result in Continental being informed of the "specific fraudulent acts" which constitute the basis of the complaint. *D & G Enterprises v. Continental Illinois National Bank and Trust Company of Chicago,* 574 F.Supp. 263, 268 (N.D.Ill. 1983).

*Accord Decker v. Massey–Ferguson Ltd.,* 681 F.2d 111, 119 (2nd Cir.1982). Based upon these decisions, the Court is of the opinion that all elements of secondary liability in securities fraud cases must be pleaded with the particularity prescribed by Rule 9(b) as interpreted by the Tenth Circuit in *Seattle–First National Bank v. Carlstedt, supra.* And while even under this standard, intent, knowledge or state of mind need not be pleaded with particularity, a claim for secondary liability must depict the acts purported to have furthered the fraud in sufficient detail to inform the defendant of what he is supposed to have done in furtherance of the fraud so that he can frame a meaningful response. *Morgan v. Prudential Group, Inc.,* 81 F.R.D. 418, 424–25 (S.D.N.Y.1978). Conclusory allegations that one aided and abetted or conspired are not enough to establish liability. *See Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 119 (2nd Cir.1982).

■ Plaintiffs' allegations against Defendant Carson are wholly inadequate in particularity to state claims for either a primary violation of Rule 10b–5 or secondary liability for aiding and abetting or conspiring in violations of Rule 10b–5 under these tests because they fail to specify that Plaintiffs ever dealt with this Defendant, what misrepresentations or omissions he

made and when and how they were directed to Plaintiffs (primary violation) or any act by Defendant Carson which substantially assisted or furthered the primary fraud (secondary liability). Moreover, Plaintiffs' pleading fails to specify with particularity any agreement by Defendant Carson with other alleged co-conspirators to violate Rule 10b–5 or to do some act in violation thereof.

 For much the same reasons that Plaintiffs' 10b–5 claims against this Defendant are defective, Plaintiffs' second cause of action, for common law fraud or conspiracy to defraud, are also defective. Plaintiffs have failed to allege any specific misrepresentations, omissions or other fraudulent acts made or done by this Defendant, much less the time, place and substance of the fraudulent acts by this Defendant and what was obtained or given up as a consequence, as required by Rule 9(b). *See* 2A J. Moore and J. Lucas, *Moore's Federal Practice* § 9.03 (1986). *See also* Okla.Stat. tit. 15, § 58; *D & H Co. v. Shultz*, 579 P.2d 821, 824 (Okla.1978). It does not appear that Oklahoma recognizes a cause of action for aiding and abetting common law fraud but that it may recognize a civil cause of action for conspiracy to defraud. *See Dill v. Rader*, 583 P.2d 496 (Okla.1978); *Pearl v. Oklahoma City*, 193 Okla. 597, 145 P.2d 400 (1944); *Clemons v. Hampton*, 191 Okla. 693, 132 P.2d 919 (1943); *Nissen v. Andres*, 178 Okla. 469, 63 P.2d 47 (Okla.1936). However, even under such a theory, Plaintiffs' claim fails because Plaintiffs have not alleged any specific act by this Defendant in furtherance of the alleged conspiracy or an agreement with other Defendants to defraud Plaintiffs, the time and place of the agreement and the substance thereof. *See, e.g., Hayduk v. Lanna*, 775 F.2d 441, 443–45 (1st Cir.1985) and *Klein v. Council of Chemical Associations*, 587 F.Supp. 213, 226–27 (E.D.Pa.1984). Accordingly, Plaintiffs' common law fraud claim against this Defendant must be dismissed. However, this Defendant's motion to dismiss the remainder of the state law claims against him for lack of subject matter jurisdiction is denied, the Court having determined that Plaintiffs have stated a claim for relief against this Defendant for control person liability for Rule 10b–5 violations.

## IV.

### *Motion to Dismiss and Alternative Motion for a More Particular Statement of Defendants Harold Hamm and Rental Tools, Inc.*

Defendants Harold Hamm and Rental Tools, Inc. have filed a motion to dismiss pursuant to Rules 12(b)(6) and 9(b), F.R. Civ.P., and an alternative motion for a more particular statement pursuant to Rule 9(b), F.R.Civ.P. In an apparent attempt to avoid the twenty-page limitation for briefs under Local Court Rule 13(C), these Defendants have filed a separate motion to dismiss Plaintiffs' state law claims pursuant to F.R.Civ.P. 12(b)(1). Hereafter the two motions to dismiss shall be referred to as one motion to dismiss. As grounds for their motion to dismiss, these Defendants assert that 1) Plaintiffs have failed to allege the essential elements of aider/abettor and conspiracy liability; 2) Plaintiffs' allegations of secondary liability for securities fraud do not satisfy the particularity requirements of Rule 9(b), F.R.Civ.P.; and 3) Plaintiffs' pendent claims should be dismissed because the federal claims must be dismissed and because, in any event, pendent jurisdiction is inappropriate because the state law claims do not arise from the same nucleus of operative facts as does the federal claim and state law issues predominate in terms of proof.

 The essential elements of a claim for aider and abettor liability for violations of Rule 10b–5 are 1) a primary violation of Rule 10b–5 by another; 2) knowledge of the violation by the alleged aider and abettor; and 3) substantial assistance by the aider and abettor. *See Feldman v. Pioneer Petroleum, Inc.*, 606 F.Supp. 916, 925 (W.D.Okla.1985), *aff'd*, 813 F.2d 296 (10th Cir.1987). *See also Zabriskie v. Lewis*, 507 F.2d 546, 554 (10th Cir.1974). Liability for conspiracy to violate Rule 10b–5 requires 1) a primary violation of Rule 10b–5 by another; 2) an agree-

ment between the alleged conspirator and the primary violator to violate Rule 10b–5 or engage in some conduct in violation of Rule 10b–5; and 3) an act committed by the alleged conspirator in substantial furtherance of the conspiracy. *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119 (2nd Cir.1982); *Bresson v. Thomson McKinnon Securities, Inc.*, 641 F.Supp. 338, 348 (S.D. N.Y.1986); *Kronfeld v. First Jersey National Bank*, 638 F.Supp. 1454, 1468–69 (D.N.J.1986); *Hill v. Equitable Bank, N.A.*, 599 F.Supp. 1062, 1083 (D.Del.1984); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1153 (S.D.N.Y.1979). *Cf. Zabriskie v. Lewis*, 507 F.2d 546, 554 (10th Cir.1974) (knowing participation and sufficient link necessary for either aider and abettor or conspirator liability). As noted in connection with Defendant Carson's motion, this Court has concluded that the elements of secondary liability for aider and abettor liability or conspiracy liability must be pleaded with the particularity required by Rule 9(b), F.R. Civ.P. *Accord, Armstrong v. McAlpin*, 699 F.2d 79, 91–93 (2nd Cir.1983); *IIT, an International Investment Trust v. Cornfeld*, 619 F.2d 909, 922–27 (2nd Cir.1980); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 651 F.Supp. 877, 880 (D.Conn.1986); *Kronfeld v. First Jersey National Bank*, 638 F.Supp. 1454, 1468 (D.N.J.1986); *Zatkin v. Primuth*, 551 F.Supp. 39, 42 (S.D.Cal.1982) (Rule 9(b) applies to claims for aiding and abetting Rule 10b–5 violations); *Hayduk v. Lanna*, 775 F.2d 441, 443–45 (1st Cir.1985); *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119–20 (2nd Cir.1982); *Segal v. Gordon*, 467 F.2d 602, 607 (2nd Cir.1972); *Beck v. Cantor, Fitzgerald & Co.*, 621 F.Supp. 1547, 1552 (N.D.Ill.1985); *Kravetz v. Brukenfeld*, 591 F.Supp. 1383, 1387–88 (S.D.N.Y. 1984); *Klein v. Council of Chemical Associations*, 587 F.Supp. 213, 226–27 (E.D.Pa. 1984); *In re Commonwealth Oil/Tesoro Petroleum Securities Litigation*, 484 F.Supp. 253, 269 (W.D.Tex.1979) (Rule 9(b) applies to claims for conspiracy to violate the securities laws or to defraud).

The allegations concerning the role of Defendants Harold Hamm and Rental Tools, Inc. in the alleged Rule 10b–5 violation are as follows:

1. During January of 1987, Eastwood began hearing rumors in Enid, Oklahoma that Defendant Rental Tools, Inc., a competitor of Eastwood Rentals, Inc., intended to take over Eastwood Rentals' operations. Based on these rumors, Eastwood contacted Defendant Hamm, president of Rental Tools, who advised that he "intended to eliminate his competition." Complaint at ¶ 29.

2. On or about February 17, 1987 Rental Tools requested that the phone company transfer the telephone number of Eastwood Rentals to Rental Tools' name. Complaint at ¶ 30.

3. On or about February 21, 1987, Rental Tools representatives changed the locks on Eastwood Rentals' yard. Prior to that time, Rental Tools had begun informing the public that Eastwood Rentals was in default on its loans. Complaint at ¶ 31.

4. By letter dated February 24, 1987, a representative of Rental Tools advised Eastwood and the other shareholder of Eastwood Rentals that Rental Tools had purchased all of the stock of Rental Tools and that all previous directors and officers of Rental Tools had been removed and new officers and directors elected. Complaint at ¶ 33.

5. At an Eastwood Rentals stockholders' meeting on April 13, 1987, Hamm proposed and passed a motion to liquidate Eastwood Rentals. Complaint at ¶ 34.

6. Rental Tools continues to assert control over the business of Eastwood Rentals. Complaint at ¶ 36.

7. Defendants National Bank of Commerce, Fergeson and Carson lulled Eastwood Rentals and Eastwood into a belief that the bank was willing to restructure Eastwood Rentals' indebtedness when they were in fact secretly planning and executing a scheme to liquidate Eastwood Rentals and retire its indebtedness. Com-

plaint at ¶ 38. These Defendants "conspired with and were aided and abetted in their scheme to liquidate [Rental Tools] by the acts, conduct, representations and omissions of Defendants Rental Tools and Hamm" who stood to gain by eliminating their competition and converting Eastwood Rentals' assets. Complaint at ¶ 39.

8. Defendant Hamm as an officer of Rental Tools controlled its actions in the scheme. Complaint at § 41.

9. The bank, Fergeson and Carson "in conspiracy with and aided and abetted by Rental Tools and Hamm executed a scheme to liquidate Eastwood Rentals" by numerous acts, misrepresentations and omissions, Complaint at ¶¶ 42–44, none of which acts, misrepresentations or omissions are ascribed to Defendants Rental Tools and Hamm and indeed are specifically ascribed in prior allegations in the complaint to other Defendants.

■ Upon scrutiny, the only substantial assistance in the alleged primary fraud that can be inferred from Plaintiffs' allegations is the purchase at a private sale of Rental Tools' stock. Such ordinary commercial activity may constitute substantial assistance, if it is clearly and intentionally directed toward aiding the fraud. *See Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 96, 97 n. 29 (5th Cir.1975). *Cf. Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152–3, 92 S.Ct. 1456, 1471–72, 31 L.Ed.2d 741, 760–61 (1972) (no duty of disclosure accompanies ordinary function as transfer agent); *Seattle–First National Bank v. Carlstedt*, 800 F.2d 1008, 1011 n. 2 (10th Cir.1986) (routine participation in loans). It may certainly be inferred from Plaintiffs' allegations that Defendants Rental Tools, Inc. and Hamm knew prior to the sale of Eastwood Rentals stock that the Bank was going to sell Eastwood Rentals' stock in order to reduce or retire Eastwood Rentals' debt to the Bank. But Plaintiffs have not alleged and there are no facts from which it can be inferred that these Defendants were aware of any

misrepresentations or material omissions which induced Plaintiffs to refrain from making monthly payments due on notes to the bank, which allegedly resulted in the sale, or, even assuming that such knowledge had been alleged, that these Defendants had a duty to disclose misrepresentations made by the alleged primary violators. Absent such allegations of knowledge, or factual allegations from which knowledge could be inferred, Plaintiffs' Complaint fails to state a claim against these Defendants for aiding and abetting a 10b–5 violation.

Plaintiffs' allegations against Defendants Rental Tools, Inc. and Hamm for conspiracy to violate Rule 10b–5 are similarly flawed. While Plaintiffs have sufficiently alleged an act by these Defendants in furtherance of the conspiracy—the purchase of Eastwood Rentals' stock, Plaintiffs have not by their factual allegations established how this purchase was wrongful. While a prior agreement with the Bank to purchase such stock can certainly be inferred from the factual allegations in that Complaint, *see* ¶¶ 30–34, absent allegations that, for example, Defendants Rental Tools and Hamm knew of the Bank's alleged misrepresentations to Plaintiff Babe Eastwood concerning the restructuring of Eastwood Rental's loan, Plaintiffs' conclusory allegations that these Defendants conspired with others to do acts allegedly violative of the Rule 10b–5 are insufficient to establish the element of an agreement to engage in conduct in violation of Rule 10b–5. The purchase of Eastwood Rentals' stock at below-market price does not warrant an inference that these Defendants entered into a conspiratorial agreement to defraud Plaintiffs where the primary fraud alleged is the lulling of Plaintiffs into the belief that the bank would restructure Eastwood Rentals' loans. *Compare with Hill v. Equitable Bank, N.A.*, 599 F.Supp. 1062 (D.Del.1984). Furthermore, factual allegations from which a mere inference of an agreement may be drawn are not sufficient to satisfy Rule 9(b). Plaintiffs must allege an agreement, its substance and the time and place where the agreement was made to satisfy this requirement. *See, e.g., Hayduk v.*

*Lanna,* 775 F.2d at 443–45; *Klein v. Council of Chemical Associations,* 587 F.Supp. at 226–27. Having failed to allege claims for secondary liability for violations of Rule 10b–5 and to allege them with the requisite particularity, Plaintiffs' federal law claims are dismissed pursuant to F.R. Civ.P. 12(b)(6). *See Seattle–First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986) (failure to allege fraud with the particularity required by Rule 9(b) is properly treated as a failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6)). In view of the Court's disposition of the federal law claims, the state law claims against these Defendants will be dismissed as well, without prejudice. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966).

### Conclusion

For the reasons above stated, the motion to stay of Defendants Harold Hamm and Rental Tools, Inc. is denied; the motion to dismiss of Defendants National Bank of Commerce, Altus, Oklahoma and Ken Fergeson is denied; Defendant Phil G. Carson's motion to dismiss Plaintiffs' first cause of action predicated on control person's liability for violations of Rule 10b–5 is denied, his motion to dismiss Plaintiffs' first cause of action predicated on aider and abettor and/or conspirator liability for 10b–5 violations is granted, his motion to dismiss Plaintiffs' second cause of action for common law fraud is granted, and his motion to dismiss the remainder of Plaintiffs' causes of action is denied; and the motion to dismiss of Defendants Harold Hamm and Rental Tools, Inc. is granted. In view of the Court's disposition of the motion to dismiss of Defendants Harold Hamm and Rental Tools, Inc., the Court finds it unnecessary to address the motion for a more particular statement filed by those Defendants. The dismissals effected by the granting of these motions are without prejudice. Plaintiffs are granted leave to amend their complaint to cure the defects in the claims dismissed hereby, if they can do so, within ten (10) days of the date of this Order.