**L. E. FREY, Appellee and Cross-Appellant,**

v.

**Gerald FRANKEL and Duo-Bed Corporation, a Corporation, Appellants and Cross-Appellees.**

**Nos. 45–70, 46–70.**

United States Court of Appeals,
Tenth Circuit.

June 11, 1971.

Robert Martin, Wichita, Kan. (William L. Oliver, Jr., Martin, Porter, Pringle, Schell & Fair, Wichita, Kan., on the brief), for appellee and cross-appellant.

George C. Spradling, Wichita, Kan. (Jerry D. Bogle, and Lilleston, Spradling, Gott, Stallwitz & Hope, Wichita, Kan., of counsel, on the brief), for appellants and cross-appellees.

Before LEWIS, Chief Judge, and BREITENSTEIN and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is the second time this controversy has been before this court. *See* Frey v. Frankel, 361 F.2d 437 (10th Cir.) for general background information. However, some reference to the state of the pleadings is necessary in order to place the present controversy in focus.

L. E. Frey, an inventor who was president and majority stockholder in the so-called *old* Duo-Bed Corporation, made claim against the so-called *new* Duo-Bed Corporation and one Gerald Frankel, Frankel being the president and majority stockholder in the new Duo-Bed which had resulted from a reorganization under the provisions of Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701, et seq. Frey asserted four separate claims for relief. In the first claim Frey alleged that he was to receive an employment contract with the reorganized Duo-Bed for a period of five years at an annual salary of $24,000 per year, and that Duo-Bed at the instigation and under the direction of Frankel failed and refused to execute such contract. In this regard Frey, who as a matter of fact did work some eight months for Duo-Bed after its reorganization before he was discharged, sought damages from both Duo-Bed and Frankel in the amount of $104,000.

In his first claim Frey also alleged that as a part of the reorganization plan he was to receive an option to purchase at one-half of par value one-third of the Class A stock to be issued by the reorganized Duo-Bed, and that Frankel had again failed and refused to execute and deliver such an option. In this latter regard Frey alleged that he had been damaged in the amount of $187,500.

In the second claim Frey alleged that Frankel, in breach of a fiduciary duty, had by false representations fraudulently induced him to assign to Frankel personally certain stock which he (Frey) owned in the old Duo-Bed, namely, 148,864 shares, along with certain patents and patent rights. In this connection Frey sought to have the assignment declared void or that Frankel be decreed a trustee of the aforesaid stock and patents or that he be awarded damages of $148,864 for the stock thus assigned and the sum of $250,000 as the reasonable value of the assigned patents.

In his third claim Frey, as a stockholder, sought to require Frankel to account to Duo-Bed for any and all losses resulting from the allegedly wrongful purchase of corporation debentures by Frankel from creditors of the corporation. In this regard it was alleged that Duo-Bed had suffered a loss of about $200,000.

The fourth claim was an alternative to the first and second claims for relief, and in it Frey asked that any contractual arrangement between himself and Frankel be rescinded and that his stock interest and patents be restored to him upon the return to Frankel of his investment in Duo-Bed.

**1242**

In their answer Frankel and Duo-Bed asserted a counterclaim wherein they alleged that Frey had not fully assigned to Frankel the 148,846 shares of stock which he had agreed to do, and asked that Frey be ordered to assign to Frankel 74,432 shares of Duo-Bed stock. As concerns the assignment of patent rights, such was to be made to Duo-Bed, not Frankel, according to both defendants, and in this connection they sought an order that Frey be compelled to assign to Duo-Bed the "BlankeTuck Patent" in particular.

On motion for summary judgment the trial court entered judgment for Frankel and Duo-Bed on each of the four claims for relief and at the same time entered judgment for Frankel and Duo-Bed on their counterclaim. The basis for the summary disposition was the holding of the trial court that Frey, having participated in reorganization proceedings which culminated in a final order of confirmation, was estopped from asserting any of his four claims for relief. On appeal the judgment of the trial court was affirmed as to the first and fourth claims, but reversed as to claims two and three. Frey v. Frankel, *supra.*

Upon remand, trial to the court culminated in a judgment in the sum of $14,886.40 for Frey against both Duo-Bed and Frankel on the second claim. In this regard the trial court found that Frankel had "duped" Frey into parting with his 148,864 shares of stock in old Duo-Bed and damages were computed on the basis of ten cents per share. Our study of the decision of the trial court discloses no award, as such, in connection with the patent rights phase of the controversy. However, the defendants' counterclaim requesting that Frey be directed to fully assign his stock in the old Duo-Bed to Frankel and the patents to the new Duo-Bed was dismissed.

As concerns the third claim, the trial court found that Frey was a stockholder of the reorganized Duo-Bed and did have standing to maintain a stockholder's derivative action. Judgment was accordingly entered "for an acounting of the actions of Frankel in dealing personally in the debentures as it may have affected the financial status of the corporation and value of its stock to stockholders of all claims." All parties now appeal.

As above stated, the trial court entered judgment on the second claim in favor of Frey and against both Duo-Bed and Frankel, jointly and severally, in the amount of $14,886.07. Duo-Bed argues that there is no basis upon which judgment on this claim could be entered against it. We agree. This particular claim, as we understand it, is aimed at Frankel only, and is based upon allegedly fraudulent acts on the part of Frankel. The actions of Frankel about which Frey complains occurred prior to the reorganization of Duo-Bed, and there is no suggestion that any wrongful conduct on the part of Frankel could under the circumstances be imputed to Duo-Bed. This particular part of the judgment must be reversed.

As concerns the judgment on the second claim against Frankel and in favor of Frey, Frankel contends that the judgment must be reversed because: (1) the undisputed facts fail to sustain a cause of action for fraud and conversion, and (2) assuming a fraudulent conversion by Frankel, the trial court erred in its measure of damages. We disagree.

As indicated, the trial court found Frankel guilty of actionable fraud in obtaining a letter agreement from Frey wherein Frey, "as an inducement to you [Frankel] to provide funds necessary to implement the proposed plan of arrangement between Duo-Bed Corporation and its creditors," agreed to assign and transfer to Duo-Bed his interest in certain patents, including BlankeTuck, and to assign and transfer to Frankel or his nominee the 148,864 shares of stock in Duo-Bed. Frey, though admitting that he had signed the aforesaid letter agreement, apparently had never actually assigned or delivered the stock (or at least not all of it) or the patents to either Duo-Bed or Frankel. And this failure to thus assign and deliver the stock and

patents formed the basis for the defendants' counterclaim.

The trial court found from a "totality of the circumstances" that Frey was "emotionally unstable" and "grasping at straws," was accordingly "ripe for plucking," and was "duped" by Frankel into agreeing to assign his stock in old Duo-Bed and certain of his patents and patent rights. Specifically, the trial court found that Frey was "led to believe" by Frankel, through misrepresentations and false inducements, that he (Frey) was to have a substantial stock ownership in the new Duo-Bed. Certainly the record before us permits the inference that Frankel, in an effort to enhance his position in the reorganized Duo-Bed, was "leading" Frey on with his blandishments, without ever actually intending to employ Frey for five years at $24,000 per year or to grant him an option to purchase at a reduced price a substantial amount of stock in the new Duo-Bed, and that it was this course of conduct which in reality induced Frey to agree to assign his stock and patents. Additionally, the trial court noted that Frey was told by Frankel (1) that the assignment of both stock and patents would be to Duo-Bed, whereas the letter agreement called for an assignment of the stock to Frankel; and (2) that such assignment was absolutely necessary because of his insecure personal financial situation which might well result in a loss of his stock and patents to a trustee in bankruptcy for the benefit of his personal creditors.

■ Although an action in fraud must ordinarily be predicated upon false statements relating to present or preexisting facts, still fraud may be predicated upon a promise to do something in the future where the promisor upon the strength of his promise receives something of value and the promisor when making the promise has no intention of ever performing. Edwards v. Phillips Petroleum Co., 187 Kan. 656, 360 P.2d 23, and Shirk v. Shirk, 186 Kan. 32, 348 P.2d 840. The record before us supports the trial court's finding that Frankel thus misled Frey and duped him into parting with valuable property rights. True, there was evidence looking the other way on the issue of fraud, namely, evidence to the effect that, even though Frey because of financial reverses was in a poor position to bargain, this was nonetheless an arms length transaction in which Frankel was himself guilty of no wrongdoing. Certainly that was the gist of Frankel's testimony. On appeal, however, our task is to determine whether there is sufficient evidence to support the determination of the trial court. We hold that there is and the trial court's finding of fraud is upheld. Such determination also resolves the contention that the trial court should have entered judgment in favor of the defendants on their counterclaim, which sought to enforce the letter agreement wherein Frey agreed to assign the stock and patent rights to Frankel and Duo-Bed respectively.

Frankel also complains about the measure of damages used by the trial court. As indicated, though Frey signed a letter agreement agreeing to convey his stock to Frankel and the patents to Duo-Bed, apparently he never did actually assign or deliver the stocks or patents in question. Notwithstanding, Frankel thereafter caused the so-called Class B stock of the reorganized Duo-Bed, which was to replace the stock of the old Duo-Bed, to be reissued to himself, rather than to Frey. About two or three years later, this particular stock (Class B) of the reorganized Duo-Bed was sold by Frankel to other interests, and the 148,864 shares of stock here in question were sold at ten cents per share. This was the basis upon which the trial court computed Frey's damages.

■ As concerns the measure of damages, Frankel contends that inasmuch as the stock here in question was virtually worthless at the time of the alleged conversion, Frey therefore suffered no damage. We agree that the general rule is that the proper measure of damages in a conversion case is the value of

the property as of the time of the conversion. However, it has been held that such does not preclude one from recovering the amount of the proceeds received by the converter upon his sale of the property previously converted by him. Gerdes v. Reynolds, Sup., 30 N.Y. S.2d 755. For general background material on this particular matter, see 89 C.J.S. Trover & Conversion § 191, pp. 654–655.

■ This, then, is but an instance where Frey, who has diligently pursued the matter, seeks to recover only that which Frankel himself received when he later sold the property which he had unlawfully converted to his own use and benefit. Indeed, it would be a strange twist of the law that would deny Frey any monetary recovery because of "no damage" and at the same time permit Frankel to pocket the $14,886.40 received by him in the subsequent sale of the stock which in the first instance he had unlawfully taken unto himself. Under the circumstances we perceive no error in the trial court's measure of damages suffered by Frey in connection with his second claim for relief. Our disposition of this phase of the controversy we deem to be within the rationale of Nephi Processing Plant v. Talbott, 247 F.2d 771 (10th Cir.)

■ By upholding the judgment of the trial court in favor of Frey against Frankel on the second claim, we have in so doing also upheld the determination by the trial court that Frey, being a stockholder in the reorganized Duo-Bed, does have sufficient standing to maintain a stockholder's derivative suit seeking to require Frankel to account for any loss resulting from an alleged wrongful purchase of corporate debentures by Frankel from corporate creditors. As we understand the judgment, the trial court "retained continuing jurisdiction for the purpose of making such orders as may be necessary or appropriate to the accounting." Such accounting has not yet been made. However, the trial court's determination that Frey, being both the owner of certain stock and the equitable owner of certain other stock in the new Duo-Bed, has such standing as would entitle him on behalf of himself and other stockholders to an accounting is upheld.

In connection with his appeal of the matter, Frey argues quite vigorously that having found that Frankel was in fact guilty of fraud, the trial court erred in failing to include as damages the amounts sought by him in his first claim for relief, namely, (1) the $104,000 sought as damages for the failure of Duo-Bed and Frankel to employ him for five years, and (2) the amount of $187,- 500 representing the damage sustained by him when Duo-Bed and Frankel wrongfully refused to grant him an option to buy stock at a reduced price in the reorganized corporation. The trial court refused to enter judgment for these items and in so doing characterized Frey's first claim for relief as now being a "dead horse." We agree.

In our earlier opinion this court held that the related matters of Frey's future employment and the option for purchase of Class A stock in the new Duo-Bed at a reduced price were concluded by their noninclusion in the order of confirmation. In so holding we noted that Frey, prior to the hearing on the reorganization proposal, filed an affidavit in which he stated that, with certain exceptions not here pertinent, the corporation "has not directly or indirectly" made any promises except as provided for in the proposed creditors' arrangement. Accordingly the matters now claimed by Frey as proper items of damage can only arise from a secret agreement with Frankel which Frey has denied by his earlier sworn statement of no "indirect" promises. In this setting, a determination now that those particular items of alleged damage might nonetheless still be considered and allowed as a part of the fraud claim would be clearly at odds with our earlier opinion and would in fact so undermine it as to render it a virtual nullity.

■ We find nothing in our earlier opinion which would justify the belief

that, though the summary judgment for Duo-Bed and Frankel on the first claim of Frey's complaint was proper and therefore affirmed, the items of damage asserted therein could nonetheless later be reinjected into the controversy as a part of the second claim. The law of the case as spelled out in our first opinion is that summary judgment in favor of Duo-Bed and Frankel on the first and fourth claims was proper; that summary judgment on the second and third counts was improper and that those two claims—and only those two—were all that remained for remand for trial on the merits; and that the second claim was limited to any damage sustained by Frey in connection with the assignment of his stock and patent rights in the old Duo-Bed. We therefore find no merit in Frey's present argument that in addition to $14,886.40 awarded him on the second claim he should also be permitted to recover the $291,500 sought by him in his first claim for relief. As indicated, the law of the case precludes such legerdemain.

The judgment against Duo-Bed on Frey's second claim is reversed; in all other respects the judgment is affirmed.